IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

US BIOSERVICES CORPORATION, et al., )
)
           Plaintiffs, )
)
v. )   Case No. 08-2342-JWL
)
LETICIA LUGO, et al., )
)
           Defendants. )
)
_____)

**MEMORANDUM AND ORDER**

In this action, by their second amended complaint, plaintiffs assert claims against defendants for violation of the federal Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030; misappropriation of trade secrets in violation of K.S.A. § 60-3320; and tortious interference with contract or prospective business advantage. This matter presently comes before the court on the motion by defendant Garth Groman to dismiss the claims against him for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2) (Doc. # 10). For the reasons set forth below, the court **denies** the motion.

### I.    Governing Standards

Plaintiffs allege the existence of diversity jurisdiction in this case. To obtain personal jurisdiction over a nonresident defendant in a diversity action, "a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the

exercise of jurisdiction would not offend due process." *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). Because Kansas's long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Kansas law collapses into the single due process inquiry. *See OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998).

Plaintiffs also assert federal question jurisdiction, based on their CFAA claim. Before a federal court can exercise personal jurisdiction over a defendant in a federal question case, "the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Peay v. BellSouth Med. Assistance Plan,* 205 F.3d 1206, 1209 (10th Cir.2000) (citations omitted). The CFAA does not authorize nationwide service of process, *see* 18 U.S.C. § 1030, and plaintiffs have not argued that the statute itself provides a basis for personal jurisdiction. Accordingly, under either basis for subject matter jurisdiction, the court must determine whether personal jurisdiction over Mr. Groman comports with due process.

The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant so long as the defendant purposefully established "minimum contacts" with the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Intercon*, 205 F.3d at 1247 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).

2

"Establishment of minimum contacts with the forum state requires a showing that the defendant 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State.'" *AST Sports Science, Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "Purposeful establishment of minimum contacts assures a reasonable expectation in the out-of-state defendant that he might be brought into court in the state where he sought to do business and invokes the benefits and protections of the forum state's laws." *Id.* at 1057-58 (quoting *Burger King*, 471 U.S. at 472 and *Benally v. Amon Carter Museum of Western Art*, 858 F.2d 618, 625 (10th Cir. 1988)). "In turn, the purposeful availment requirement also ensures that a defendant will not be subject to the laws of a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* at 1058 (quotation and citation omitted).

This due process standard may be met in two ways. First, a court may exercise specific jurisdiction if a defendant has "purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Intercon*, 205 F.3d at 1247 (quoting *Burger King*, 471 U.S. at 472); *accord Doering v. Copper Mountain, Inc.*, 259 F.3d 1202, 1210 (10th Cir. 2001). Second, a court may exercise general jurisdiction if the defendant's contacts with the forum state, while unrelated to the alleged activities upon which the claims are based, are nonetheless "continuous and systematic." *Intercon*, 205 F.3d at 1247; *accord Doering*, 259 F.3d at 1210.

Even if a defendant's actions created sufficient minimum contacts, the court must still consider whether the exercise of personal jurisdiction "would offend traditional notions of 'fair play and substantial justice.'" *Intercon*, 205 F.3d at 1247 (quoting *Burger King*, 471 U.S. at 476). This inquiry requires a determination of whether the "exercise of personal jurisdiction over [the] defendant is reasonable in light of the circumstances surrounding the case." *Id.* (citing *Burger King*, 471 U.S. at 477-78); *accord Peay*, 205 F.3d at 1212. In making this determination, the court considers the following factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*OMI Holdings*, 149 F.3d at 1095 (citing *Asahi Metal Industry Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987)). Moreover, an interplay exists between the reasonableness analysis and the minimum contacts analysis:

> [T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of minimum contacts.

*Id.* at 1092 (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994)).

Although plaintiff bears the burden of establishing personal jurisdiction over defendant, *see OMI Holdings,* 149 F.3d at 1091, in the preliminary stages of litigation

4

this burden is "light." *Intercon*, 205 F.3d at 1247 (quoting *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir.1995)). Where, as here, there has been no evidentiary hearing, and the motion to dismiss for lack of personal jurisdiction "is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *See id.* The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. *Id.* Moreover, if the parties present conflicting affidavits, "all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* Only the well pled facts of plaintiff's complaint, however, as distinguished from mere conclusory allegations, must be accepted as true. *Id.*

"[P]retrial resolution of jurisdictional questions is not appropriate where 'the jurisdictional issue is dependent upon a question on the merits.'" *Safety Tech., L.C. v. LG Tech., LTEE*, 2000 WL 1585631, at *3 (D. Kan. Oct. 11, 2000) (quoting *FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992)). In such instance, "the trial court should 'postpon[e] a determination upon a jurisdictional question' until trial to avoid making 'a summary decision on the merits without the ordinary incidents of a trial including the right to jury.'" *Id.* (quoting *Schramm v. Oakes*, 352 F.2d 143, 149 (10th Cir. 1965)).

## II.     Analysis

Plaintiffs have not argued or shown that Mr. Groman's contacts with Kansas were sufficiently systematic and continuous to support an exercise of general jurisdiction in this case.  Accordingly, the court considers whether it may exercise specific jurisdiction over Mr. Groman here.

Mr. Groman argues that he worked for plaintiffs from his residence in Michigan; that he had no Kansas clients while working for plaintiffs; that he owns no property in Kansas; that he traveled to Kansas during his employment with plaintiffs only twice, years ago, on matters unrelated to this suit; and that he has not traveled to Kansas in connection with his new employment with Axelacare Health Solutions, LLC ("Axelacare"), which is located in Kansas.  He also notes that the e-mail he sent to his personal account, which allegedly included plaintiffs' confidential information, was sent and received in Michigan.

The court agrees with Mr. Groman that the mere fact of his employment by a Kansas company does not provide the minimum contacts necessary for personal jurisdiction.  Moreover, although Mr. Groman has admitted that he entered into a contract with Axelacare under which he will eventually own a share of the company, the plaintiffs' claims have not been shown to arise out of or relate to that contract, as required for the exercise of specific jurisdiction.

Plaintiffs argue that Mr. Groman has solicited business in Kansas, thereby interfering with their contracts or business relationships.  By their complaints, however,

6

plaintiffs have alleged such interference only generally, and have not alleged specifically that Mr. Groman solicited any Kansas customers. Plaintiffs also suggest that, although they may have suffered financial harm in Texas, their state of residence, they have also alleged irreparable (non-financial) harm, which would have been felt by their Kansas branch offices. Again, however, plaintiffs have alleged no such specific injury occurring in Kansas.

Nevertheless, the court concludes that plaintiffs' allegation that Mr. Groman disclosed trade secrets and confidential information to Axelacare, his new employer, is sufficient to support the exercise of personal jurisdiction over Mr. Groman in this case. Mr. Groman has submitted an affidavit in which he states that he did not disclose any such information to Axelacare, and he argues that jurisdiction should not therefore be based on such an allegation. Although plaintiffs did not submit any affidavits in opposition to the motion to dismiss, their original verified complaint includes the allegation that Mr. Groman did disclose trade secrets to Axelacare in connection with his employment with Axelacare. Accordingly, whether Mr. Groman made such disclosures presents a disputed question of fact, which must be resolved in plaintiffs' favor at this stage of the litigation. The court must assume, for purposes of this motion, that Mr. Groman did in fact disclose trade secrets to Axelacare in connection with his employment with that company. Moreover, the question goes to the ultimate issue in the case; therefore, as noted above, the issue is better resolved when plaintiffs' claims are considered on their merits.

Thus, the issue becomes whether Mr. Groman's disclosure of trade secrets to his new employer in Kansas provides the necessary minimum contacts with this state—an issue that Mr. Groman has failed to address in his briefs. First, plaintiffs have alleged that Mr. Groman violated the Kansas Trade Secrets Act not only by sending trade secrets to himself by e-mail, but also by disclosing trade secrets to Axelacare. Therefore, the contact with Kansas has the required nexus to the claims at issue.

Second, the court concludes that such conduct is sufficient to satisfy the due process requirement of minimum contacts with the forum state. Certainly, if Mr. Groman had brought a package containing trade secrets to Axelacare's doorstep in Kansas, he would have subjected himself to personal jurisdiction here for claims arising out of that act. The manner of Mr. Groman's delivery of those trade secrets–whether in person, by courier, by telephone, by fax, by mail (electronic or otherwise), or by some other means—should not be material, particularly in this age of modern communications. *See AST Sports Science*, 514 F.3d at 1059 ("[M]odern communications can eliminate the need for physical presence.") (citing *Burger King*, 471 U.S. at 476). It is also significant that the doorstep in Kansas (physical or metaphorical) on which Mr. Groman deposited the trade secrets belonged not to a stranger, but to a company with whom Mr. Groman had undertaken a substantial relationship (as employee and as part-owner). Thus, when Mr. Groman disclosed his former employers' trade secrets to that new employer in Kansas, as a part of that employment, he purposefully directed activities into the state, and he reasonably may be expected to be haled into court here to answer claims arising

out of that conduct. His contacts with Kansas were not merely random, fortuitous, or attenuated, or the result of the unilateral activity of others.[1]

Mr. Groman has not offered any reasons why the court's exercise of jurisdiction over him in this case would not be reasonable or would offend traditional notions of fair play. Mr. Groman is employed by defendant Axelacare, a Kansas resident, and the same counsel has represented all three defendants in the litigation to this point. Therefore, the burden on Mr. Groman would not be great, and the parties' controversy is most efficiently resolved here, in a single proceeding. The court concludes that the second prong of the due process analysis is satisfied here. Accordingly, the court concludes that plaintiffs have met their "light", prima facie burden of establishing the court's personal jurisdiction over Mr. Groman, and Mr. Groman's motion to dismiss is denied.[2]

---

[1]None of the cases cited by Mr. Groman involve allegations that a defendant wrongfully sent information into the forum state. Plaintiffs' cases were more apt and support the exercise of jurisdiction here. *See Snyder Indus., Inc. v. Clawson Container Co.*, 991 F. Supp. 1279, 1282 (D. Kan. 1998) (jurisdiction found with respect to non-resident plaintiff's patent claim based on non-resident defendant's shipping infringing products into Kansas); *Professional Inv. Life Ins. Co. v. Roussel*, 445 F. Supp. 687 (D. Kan. 1978) (jurisdiction found with respect to non-resident plaintiff's claim that non-resident defendants effected the fraudulent takeover of a Kansas company).

[2]The parties have not addressed whether personal jurisdiction over Mr. Groman might exist for one claim but not for another. Regardless, to the extent that such jurisdiction may be lacking with respect to a particular claim, the court in its discretion exercises pendant personal jurisdiction over Mr. Groman for all of plaintiffs' claims, in light of the fact that they arise out of the same basic set of facts. *See, e.g.*, *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002).

IT IS THEREFORE ORDERED BY THE COURT THAT defendant Garth Groman's motion to dismiss for lack of personal jurisdiction (Doc. # 10) is **denied**.

IT IS SO ORDERED.

Dated this 23rd day of October, 2008, in Kansas City, Kansas.

                                               s/ John W. Lungstrum
                                               John W. Lungstrum
                                               United States District Judge